**Electronically Filed
Intermediate Court of Appeals
30680
20-DEC-2013
08:38 AM**

NO. 30680

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DAVID EDWARD KIM, DENISE NYUK LEN KIM and
TINA JEAN KIM, Plaintiffs-Appellees, v.
KEITH SHIGEAKI ODA, Defendant-Appellant/Cross-Appellee,
and DEPARTMENT OF TAXATION, STATE OF HAWAII,
Defendant-Appellee/Cross-Appellant, and
FINANCE FACTORS, LIMITED, DISCOVER BANK, through
its servicing agent, DISCOVER FINANCIAL SERVICES, INC.,
UNITED STATES OF AMERICA, DEPARTMENT OF TREASURY,
INTERNAL REVENUE SERVICE, DEPARTMENT OF LABOR &
INDUSTRIAL RELATIONS, STATE OF HAWAII, Defendants-Appellees,
and DOE PERSONS 1-20, AND DOE ENTITIES 1-20, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-1242-05)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant/Cross-Appellee Keith Shigeaki Oda
(**Oda**) appeals from a July 30, 2010 Circuit Court of the First
Circuit (**Circuit Court**) Judgment, which confirmed the partition
sale of certain property, as prayed for by Plaintiffs-
Appellees/Cross-Appellees David Edward Kim (**David Kim**), Denise
Nyuk Len Kim (**Denise Kim**), and Tina Jean Kim (**Tina Kim**), Oda's
ex-wife (collectively, the **Kims**).[1] Defendant-Appellee/Cross-
Appellant Department of Taxation of the State of Hawai'i (**Tax
Department**) cross-appeals from the July 30, 2010 Judgment.
Defendant-Appellee Department of Labor and Industrial Relations
of the State of Hawai'i (**DLIR**) purports to "substantively join"

---

[1]     The Honorable Rhonda A. Nishimura presided.

in the Tax Department's Opening Brief, but did not submit a notice of cross-appeal.

I.    BACKGROUND FACTS

    A.    The Property

        The subject property in this partition action is a parcel of real property located in Aiea, Hawaiʻi (**Property**).  On February 14, 1991, title to the Property was transferred to the Kims and Oda through a warranty deed.  Oda and Tina Kim, who were married at the time of the transfer, held a fifty-percent interest in the Property as tenants by the entirety, and they were tenants in common in relation to the interests of David and Denise Kim.  David and Denise Kim, who are married, held the other fifty-percent interest in the Property as tenants by the entirety as to each other.

        Prior to June 2009, when the Kims filed the partition complaint herein, Oda and Tina Kim divorced and, as a result, each owned a twenty-five percent interest in the Property as tenants in common.  David and Denise Kim continued to own a fifty-percent interest in the Property as tenants by the entirety and as tenants in common in relation to the interests of Oda and Tina Kim.  In contemplation of Oda and Tina Kim's divorce, Oda and the Kims entered into an Agreement in Regard to Resolution of Tax Obligations and Possible Buyout of Interests in Real Property (**Buyout Agreement**), which is discussed further below.

    B.    The Liens

        Defendant/Cross-Claimant/Counterclaimant-Appellee Finance Factors, Ltd. (**Finance Factors**) held an interest in the Property pursuant to a first mortgage of $100,000, dated March 11, 1991, and recorded in the Bureau of Conveyances of the State of Hawaiʻi (**Bureau of Conveyances**) as Document No. 91-033556.  On March 11, 1991, the Kims and Oda executed and delivered to Finance Factors an Adjustable Rate Promissory Note and an Adjustable Rate Mortgage.  In its Counterclaim and Cross-claim filed on June 29, 2009, Finance Factors alleged that, as of June 17, 2009, the Kims and Oda owed a principal balance of $69,739.49, plus interest of $278.95, for a total of $70,018.44,

plus any further interest, late charges, and advances, accrued thereafter, as well as any attorneys' fees and expenses incurred by Finance Factors.

Finance Factors also held an interest in the Property pursuant to a second mortgage in the original amount of $130,000, dated February 7, 1996, and recorded in the Bureau of Conveyances as Document No. 96-018016. On February 7, 1996, David and Denise Kim executed and delivered to Finance Factors an Adjustable Rate Promissory Note. In addition, on that same day, the Kims and Oda executed and delivered the second mortgage, with David and Denise Kim identified as the mortgagors, and with Oda and Tina Kim identified as accommodation mortgagors. In its Counterclaim and Cross-claim, Finance Factors alleged that, as of June 17, 2009, David and Denise Kim owed a principal balance of $102,700.08 on the note associated with the second mortgage, plus interest of $308.10, minus an escrow of $1,626.84, for a total of $101,381.34, plus any further interest, late charges, and advances, accrued thereafter, as well as any attorneys' fees and expenses incurred by Finance Factors.[2]

On August 12, 1994, the Tax Department recorded in the Bureau of Conveyances, as Document No. 94-134872, a Certificate of State Tax Lien against Oda in the amount of $66,042.05, dated August 10, 1994. On December 12, 1995, the Tax Department recorded in the Bureau of Conveyances, as Document No. 95-160485, a second Certificate of State Tax Lien against Oda in the amount of $10,540.70, dated December 11, 1995. The Tax Department identified its liens and claimed additional taxes, penalties, and interest were due from Oda, in its Answer and Affirmative Statement of Claim, filed on July 22, 2009, which included copies of the liens, and a summary of taxes due.

---

[2] As of October 15, 2009, updated principal and interest balances owed to Finance Factors were reportedly $68,859.76 on the note secured by the first mortgage and $101,850.59 on the note secured by the second mortgage, apparently unadjusted for the escrowed funds. The record does not include any report of the actual amounts disbursed from the proceeds of the sale of the Property.

On September 20, 1994, the DLIR recorded in the Bureau of Conveyances, as Document No. 94-154533, a Certificate of State Tax Lien against Oda in the amount of $8,483.21, which was dated September 15, 1994. On October 5, 1995, the DLIR recorded in the Bureau of Conveyances, as Document No. 95-128729, a second Certificate of State Tax Lien against Oda in the amount of $2,533.99, which was dated October 4, 1995. On August 9, 1996, the DLIR recorded in the Bureau of Conveyances, as Document No. 96-115269, a third Certificate of State Tax Lien against Oda in the amount of $40.93, which was dated August 8, 1996. In its Answer and Affirmative Statement of Claim, filed on June 25, 2009, the DLIR referenced liens, taxes, penalties and interest due to DLIR, but did not include copies of its liens. Copies of its first and second Certificates of State Tax Lien were submitted to the Circuit Court by the DLIR, on November 10, 2009, in conjunction with its limited opposition to a summary judgment motion filed by Finance Factors. A copy of its third Certificate of State Tax Lien was submitted to the Circuit Court by the DLIR, on June 4, 2010, in conjunction with its limited opposition to the Kims' motion for confirmation of partition sale, which included a request for distribution of proceeds.

On September 4, 2008, Defendant-Appellee Discover Bank (**Discover Bank**) recorded in the Bureau of Conveyances, as Document No. 2008-139445, a judgment dated October 24, 2001, which was entered in favor of Discover Bank and against Oda in the amount of $6,064.24.[3]

On November 15, 2006, Defendant-Appellee Internal Revenue Service (**IRS**), recorded in the Bureau of Conveyances, as Document No. 2006-208753, a Notice of Federal Tax Lien against Oda, in the amount of $8,195.70. In its Answer, Counterclaim,

---

[3] This court notes that a November 9, 2009 memorandum filed by Discover claims a total amount due of $11,119.35, as of October 5, 2009, for "post judgment interest and other charges." The record does not appear to include any declaration or other evidence supporting these amounts. In addition, it is unclear why the Circuit Court determined that Discover Bank's judgment lien, recorded in 2008, took priority over the IRS's Federal Tax Lien, recorded in 2006. However, as no objection or argument has been made concerning these issues, any such argument is waived.

Cross-claim, filed on July 30, 2009, the IRS asserted an outstanding balance due on that lien in the amount of $574.40, as of August 3, 2009.

C.      The Oda-Kim Divorce

Prior to the filing of Oda and Tina Kim's Divorce Decree on June 4, 2008, Oda and the Kims entered into the Buyout Agreement, which is undated, but appears to have been executed some time in 2005. In the Buyout Agreement, Oda agreed to make a good faith effort to negotiate a release of the tax liens on the Property. Upon a settlement with the taxing authorities, Denise and David Kim were to be given an opportunity to buy the Property from Oda and Tina Kim. Paragraph 12 of the Buyout Agreement set forth the parties' agreement, if one of the parties was unable to timely perform their obligations, and provides as follows:

> If, notwithstanding the best good faith efforts of the parties, one or more of them are unable to perform their obligations hereunder within the specified time periods, and it is therefore not possible to effect a buyout in regard to the [Property] in accordance with the terms and provisions set forth herein, then, the parties' rights, obligations, and interests with respect to the [Property] in the Divorce shall be settled and resolved as follows:
>
> (a) [Tina Kim],[Oda], and [David and Denise Kim] shall continue to be co-owners of the [Property], subject to the Mortgages and the Tax Liens.
>
> (b) [Tina Kim] shall own a one-fourth (1/4) share of the [Property] as a tenant in common as to the other co-owners.
>
> (c) [Oda] shall own a one-fourth (1/4) share of the [Property] as a tenant in common as to the other co-owners.
>
> (d) [David and Denise Kim] shall own a one-half (1/2) share of the [Property] as tenants in common to [Tina Kim] and [Oda], and as tenants by the entireties as to each other.

Oda and Tina Kim's Divorce Decree divided and distributed their respective interests in the Property in accordance with the Buyout Agreement, except that it extended the date by which Oda needed to complete his negotiations with the tax authorities. The Divorce Decree also provided that the parties' mortgage loans with Finance Factors, and tax liabilities related to Oda's dissolved business would be governed by the terms of the Buyout Agreement, and that all other debts would be the sole responsibility of the party who incurred that debt,

unless it was addressed in the Buyout Agreement. The Divorce Decree further provided, however:

> 2) If Oda does not successfully negotiate agreements with the tax authorities which satisfy the Tax Obligations and result in the release of the Tax Liens, in accordance with paragraphs 1-11 of the [Buyout Agreement], then, if and to the extent that he makes or is required to make payments to the tax authorities on account of the Tax Obligations after the effective date of this Decree, [Tina Kim] shall indemnify [Oda] and shall reimburse him in an amount, or in such amounts, that total one-half (1/2) of any payments made by [Oda] on account of the Tax Obligations.

D.   Circuit Court Proceedings

On June 1, 2009, the Kims filed a complaint seeking a partition sale of the Property pursuant to Hawaii Revised Statutes (**HRS**) §§ 668-7 (1993) and 668-13 (1993), including the equitable apportionment of the sales proceeds, and an award of attorneys' fees and costs. The other parties to the partition answered, and filed various affirmative statements of interest, counterclaims, and cross-claims.

At a November 18, 2009 hearing on the Kims' motion for summary judgment and interlocutory decree of partition by sale, Finance Factors' limited cross-motion for summary judgment, and Oda's motion for summary judgment, the Circuit Court: (1) granted the Kims' motion, (2) denied Oda's motion, and (3) granted Finance Factors' cross-motion. The Circuit Court concluded that it had jurisdiction to hear the partition case and that the Kims had not waived their right to partition in the Buyout Agreement.

On December 11, 2009, the Circuit Court entered its Findings of Fact, Conclusions of Law, Order Granting Defendant Finance Factor, Limited's Cross Motion for Summary Judgment. Also on December 11, 2009, a separate Judgment was entered on the order in favor of Finance Factors, pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 54(b). No appeal was taken from the December 11, 2009 Judgment.

On December 22, 2009, the Circuit Court entered its Order Granting Plaintiffs' Motion for Summary Judgment and Interlocutory Decree of Partition By Sale, as well as a separate order denying Oda's motion for summary judgment.

On February 25, 2010, a Commissioner's Report was filed, seeking, *inter alia*, confirmation of the sale of the Property to David Kim or his nominee for $500,000.

On April 5, 2010, the Kims filed a motion, also seeking, *inter alia*, confirmation of the sale of the Property, the apportionment of the net sales proceeds to the co-owners of the Property in accordance with their respective interests, the determination and distribution of the net sales proceeds in accordance with the priority of the other claims and liens, including a charge against the responsible owner's respective share of the net sales proceeds, and thereupon, the distribution to the co-owners of any surplus of their respective shares of the net sales proceeds. After various filings by other parties to the proceedings, on July 19, 2010, the Circuit Court entered its Order Granting Plaintiffs' Motion for Confirmation of Partition Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance (**Distribution Order**).

In the Distribution Order, the Circuit Court ordered payment of attorneys' fees and costs to the Commissioner in the amount of $3,174.80, the Kims' attorneys in the amount of $18,282.38, and Finance Factors' attorneys in the amount of $9,484.46. After the payment of the fees and costs, the Circuit Court ordered the apportionment and distribution of the net sales proceeds to Oda and the Kims in accordance with their respective interests (25% each),

> to the extent such sale proceeds are available, according to the following priority and charge against the responsible owner's respective share of the net sales proceeds, and thereupon distribute to the co-owners any surplus of their respective apportioned share of the net sales proceeds:
>
> 1. FINANCE FACTORS, LIMITED's First Mortgage dated March 11, 1991, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 91-033556, charged to DAVID EDWARD KIM, DENISE NYUK LEN KIM, TINA JEAN KIM and KEITH SHIGEAKI ODA;
>
> 2. FINANCE FACTORS, LIMITED's Second Mortgage dated February 7, 1996, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 96-018016, charged to DAVID EDWARD KIM, DENISE NYUK LEN KIM, TINA JEAN KIM and KEITH SHIGEAKI ODA;

3.     DEPARTMENT OF TAXATION, STATE OF HAWAII's Certificate of State Tax Lien dated August 10, 1994, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 94-134872, charged to KEITH SHIGEAKI ODA;

4.     DEPARTMENT OF LABOR & INDUSTRIAL RELATIONS, STATE OF HAWAII's Certificate of State Tax Lien dated September 15, 1994, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 94-154533, charged to KEITH SHIGEAKI ODA;

5.     DEPARTMENT OF LABOR & INDUSTRIAL RELATIONS, STATE OF HAWAII's Certificate of State Tax Lien dated October 4, 1995, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 95-128729, charged to KEITH SHIGEAKI ODA;

6.     DEPARTMENT OF TAXATION, STATE OF HAWAII's Certificate of State Tax Lien dated December 11, 1995, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 95-160485, charged to KEITH SHIGEAKI ODA;

7.     DEPARTMENT OF LABOR & INDUSTRIAL RELATIONS, STATE OF HAWAII's Certificate of State Tax Lien dated August 8, 1996, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 96-115269, charged to KEITH SHIGEAKI ODA;

8.     DISCOVER BANK's, through its servicing agent, DISCOVER FINANCIAL SERVICES, INC., Judgment dated October 24, 2001, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2008-139445, charged to KEITH SHIGEAKI ODA; and

9.     UNITED STATES OF AMERICA, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE's Notice of Federal Tax Lien dated November 3, 2006, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2006-208753, charged to KEITH SHIGEAKI ODA[.]

The Judgment was entered on July 30, 2010. On August 18, 2010, Oda timely filed a notice of appeal. On September 1, 2010, the Tax Department timely filed a notice of cross-appeal.

II.    POINTS OF ERROR

Oda identifies seven points of error on appeal, contending that the Circuit Court erred when it: (1) permitted the Kims to proceed with a partition action because the Kims had waived their right to file and proceed with the partition case; (2) permitted the Kims to proceed with a partition action because the Kims acted in bad faith in violation of an agreement and the implied covenant of good faith and fair dealing; (3) permitted the Kims to proceed with a partition action because the Family Court, rather than the Circuit Court, had jurisdiction over the Property and the parties; (4) permitted Finance Factors to

8

foreclose on its mortgage because there was no default other than the partition action; (5) allocated the proceeds from the partition sale because Oda had to pay a note he did not sign or receive any benefit from;[4] (6) allocated the proceeds from the partition sale because Tina Kim did not have to pay a state lien that she was obligated to pay under the Family Court's ordered indemnity agreement;[5] (7) granted attorneys' fees to the Kims and Finance Factors because the attorney fees claims were not supported in the record and had over billing, block billing, and billing in fifteen minute increments.

The Tax Department contends that the Circuit Court erred by concluding that Finance Factors' second mortgage had priority over the Tax Department's liens with respect to Oda's share of the sale proceeds.

III. APPLICABLE STANDARDS OF REVIEW

"Partition is an action in equity, and we review that action under the abuse of discretion standard." Curtis v. Dorn, 123 Hawaiʻi 301, 307, 234 P.3d 683, 689 (App. 2010) (citations omitted). In a partition action, a circuit court has the power, among other things:

> [T]o sell the whole, where for any reason partition in kind would be impracticable in whole or in part or be greatly prejudicial to the parties interested, and by judgment or judgments to invest the purchaser or purchasers with title to any property sold, and use the proceeds to equalize the general partition[.]

HRS § 668-7(6) (1993).

More generally,

> [t]he relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant.

Curtis, 123 Hawaiʻi at 306, 234 P.3d at 688 (citation and internal quotation marks omitted).

---

[4] Oda is referring to Finance Factors' second mortgage.

[5] Oda is referring to Tina Kim's indemnity obligation under paragraph M of the divorce decree.

In addition,

> [w]e review a circuit court's grant or denial of summary judgment *de novo* under the same standard applied by the circuit court. As we have often articulated: summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (internal citations, quotation marks, brackets, and ellipsis omitted; format altered).

IV. DISCUSSION

A. DLIR's Argument

As a preliminary matter we note that, although the DLIR "substantively joined" in the Tax Department's opening brief, the record does not include a notice of cross-appeal filed by the DLIR from the July 30, 2010 judgment. "An appellant's failure to file a timely notice of appeal is a jurisdictional defect that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion." Enos v. Pac. Transfer & Warehouse, Inc., 80 Hawai'i 345, 349, 910 P.2d 116, 120 (1996) (citation and internal quotation marks omitted). Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 4.1(b)(1) governs the time for filing a notice of cross-appeal:

> A notice of cross-appeal shall be filed within 14 days after the notice of appeal is served on the cross-appellant, [6] or within the time prescribed for filing the notice of appeal, whichever is later.

Here, a jurisdictional defect bars appellate review of the DLIR's assertions of error with respect to the priority of its claims because the DLIR failed to timely file a notice of cross-appeal.

---

6     A certificate of service dated August 18, 2010 certified that Oda's notice of appeal was served on DLIR.

B.    The Circuit Court Properly Allowed Partition

HRS § 668-1 (1993) governs partition of jointly-owned real estate and provides as follows:

> **§ 668-1 Actions for partition.** When two or more persons hold or are in possession of real property as joint tenants or as tenants in common, in which one or more of them have an estate in fee, or a life estate in possession, any one or more of such persons may bring an action in the circuit court of the circuit in which the property or some part thereof is situated, for a partition of the property, according to the respective rights of the parties interested therein, and for a sale of the same or a part thereof if it appears that a partition cannot be made without great prejudice to the owners. The several circuit courts shall have power, in any action for partition, to proceed according to the usual practice of courts of equity in cases of partition, and according to this chapter in enlargement thereof.

The general rule in jurisdictions where partition is provided for by statute, such as Hawai'i, is:

> Where a case is fairly brought within the law authorizing a partition, it is generally conceded that the right to partition is imperative and absolutely binding upon courts having jurisdiction of such proceeding, and they are not clothed with such discretion that, under a given state of facts, they may grant the relief or refuse it, and yet commit no error.

Henmi Apartments, Inc. v. Sawyer, 3 Haw. App. 555, 562, 655 P.2d 881, 886 (1982) (citations omitted).

"[N]otwithstanding the non-discretionary nature of a partition action, the right to partition may be waived by express or implied contract." Id. at 562, 655 P.2d at 887 (citations omitted).

Here, the Circuit Court found that it had jurisdiction over the partition action, stating:

> This Court is as a Court of equity, under HRS 668-1, actions for partition. Partition is properly relegated to this particular Court, and not the Family Court. The divorce decree had entered on June 4, 2008. More than a year has passed. The divorce decree does not mean that the parties have waived any partition action. There is no contractual obligation imposed upon plaintiffs[.]

We agree. The Kims had an absolute right to partition, which they did not waive by virtue of the Divorce Decree or the Buyout Agreement. There is no evidence in the record indicating that the Kims and Oda agreed to hold the Property for a particular period of time or that it was the parties' intent and

understanding that they could not divest of their interest in the Property. Under the Buyout Agreement, Oda was obligated to attempt to negotiate a release of his tax liens, but he was unable to do so. The Kims were not obligated to assist Oda in negotiating with the tax authorities. Under the circumstances here, the fact that the Kims pursued their statutory right of partition is not evidence of either a violation of the implied covenant of good faith and fair dealing with respect to the Buyout Agreement, or the Family Court's decree.

Oda argues, in particular, that the Family Court's retention of jurisdiction over the parties to the Divorce Decree deprived the Circuit Court of jurisdiction over this partition action. Oda relies on paragraph 4.C. of the Divorce Decree, which approved the Buyout Agreement, as amended by the Family Court (by extending the date by which Oda needed to complete his negotiations with the tax authorities to July 1, 2008), and which stated:

> Except as otherwise limited by Statute, Court Rule, or Case Authority, the Family Court shall retain jurisdiction over the parties with respect to the provisions of this paragraph no. 4.C. in order to enforce the same.

We reject the Kims' argument that the Family Court was divested of jurisdiction by HRS § 580-56(d). See Reithbrock v. Lange, 128 Hawai'i 1, 3, 282 P.3d 543, 545 (2012). Nevertheless, nothing in the Divorce Decree or the Buyout Agreement bars, waives, or otherwise limits, the exercise of the Kims' statutory right of partition in the Circuit Court, notwithstanding the Family Court's retention of jurisdiction to enforce its decree. Accordingly, we reject Oda's arguments that the Circuit Court erred in permitting the Kims to proceed with the partition action.

C.    Finance Factors's Foreclosure

Oda argues that the Circuit Court erred when it allowed Finance Factors to foreclose on its mortgages because there was no default. However, Oda's argument is untimely and must be dismissed.

12

As stated above, on December 11, 2009, pursuant to HRCP Rule 54(b), the Circuit Court entered a judgment on a decree of foreclosure in favor of Finance Factors and against the Kims and Oda. Oda failed to appeal from the December 11, 2009 judgment within thirty days after its entry, as HRAP Rule 4(a)(1) requires.[7] Accordingly, we conclude that we lack appellate jurisdiction to review Oda's argument that Finance Factors was not entitled to foreclose on the mortgages.

D. The Charge to Oda for the Second Mortgage

Oda argues, in effect, that his interest in the proceeds of the sale of the Property was improperly charged with respect to debt underlying the second mortgage in favor of Finance Factors. We agree.

The evidence submitted into the record in this case clearly establishes that: David and Denise Kim were the borrowers on the promissory note secured by the second mortgage; David and Denise Kim were the mortgagors with respect to the second mortgage; and Oda and Tina Kim were accommodation mortgagors with respect to the second mortgage. Although the Buyout Agreement specified various agreements amongst the parties thereto if David and Denise Kim elected to complete a buyout as set forth in that agreement, clearly, David and Denise Kim did *not* elect to complete a buyout in accordance with the terms and conditions in the Buyout Agreement, and elected instead to file this partition action. Nothing in the Buyout Agreement purports to modify the parties' respective obligations to Finance Factors, as set forth in the various notes and mortgages. No declaration or evidence contrary to the obligations set forth in the promissory notes and mortgages was submitted in this case.

HRS § 490:3-419(b) (2008) states that an accommodation party "is obliged to pay the instrument in the capacity in which the accommodation party signs . . . whether or not the

---

[7] HRAP Rule 4(a)(1) (2010) provides, in relevant part:

When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.

accommodation party receives consideration for the accommodation." However, HRS § 490:3-419(e) states that "[a]n accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party." Further, the Hawai'i Supreme Court has held that "the accommodated party upon whom the law casts the implied obligation of reimbursing the accommodation party is the party who, in accordance with the prior understanding of the parties, receives the direct benefit from the accommodation paper or its proceeds[.]" Dillingham v. Scott, 19 Haw. 421, 426 (Haw. Terr. 1909).

Thus, with respect to Finance Factors, the property interests of all mortgagors, including the accommodation mortgagors (Oda and Tina Kim), were subject to Finance Factors's security interest in the Property created by the second mortgage (and thus subject to foreclosure of that interest). In other words, all of their interests in the Property were burdened by this liability, and Finance Factors was entitled to payment of its secured debt, in accordance with its priority, prior to the distribution of any surplus to Oda and/or the Kims. Nevertheless, as an accommodation party on the second mortgage, Oda is entitled to "reimbursement from the accommodated party," in this case, David and Denise Kim. In other words, with respect to reconciliation of the interests of the parties in relation to one another, the debt related to the second mortgage was David and Denise Kim's debt, not Oda's, and should have been treated as such. Accordingly, we conclude that the Circuit Court erred in charging Oda's interest in the proceeds of the sale of the Property with any portion of the debt secured by the second mortgage.[8]

E.    The Tax Obligations

Oda argues, in effect, that his interest in the proceeds of the sale of the Property was improperly charged with

---

[8]    Tina Kim did not appeal the Circuit Court's charge against her respective share of the proceeds of the sale of the Property.

100% of the Tax Obligations (evidenced by the Tax Department and IRS liens) because, under the terms of the Divorce Decree, Tina is responsible for 50% of those obligations. Paragraph M of the Divorce Decree provides:

> 1) If Husband successfully negotiates agreements with the tax authorities which satisfy the Tax Obligations and result in the release of the Tax Liens, in accordance with paragraphs 1-11 of the [Buyout Agreement], then Husband shall be solely responsible for paying the Tax Obligations without contribution from Wife.
>
> 2) If Husband does not successfully negotiate agreements with the tax authorities which satisfy the Tax Obligations and result in the release of the Tax Liens, in accordance with paragraphs 1-11 of the Aiea Property Settlement [Buyout Agreement], then, if and to the extent that he makes or is required to make payments to the tax authorities on account of the Tax Obligations after the effective date of this Decree, Wife shall indemnify Husband and shall reimburse him in an amount, or in such amounts, that total one-half (1/2) of any payments made by Husband on account of the Tax Obligations.

We conclude that the Circuit Court erred in rejecting Oda's argument that paragraph M.2. of the Divorce Decree required Tina Kim to indemnify or reimburse Oda for 50% of the Tax Obligations. Paragraph M.1. is plainly inapplicable, as Oda did not successfully negotiate an agreement with the tax authorities. As a result of this partition action filed by Tina Kim (and the other Kims), Oda was effectively "required to make payments to the tax authorities on account of the Tax Obligations after the effective date of [the Divorce] Decree."

The Kims claim that, as stated in a Declaration filed by Tina Kim, it was the parties' intent and understanding that Tina Kim would reimburse Oda for his payment of his tax obligations only if they continued to co-own the Property. We conclude, however, that the language in paragraph M of the Divorce Decree is controlling and Oda is entitled to indemnification. Tina Kim's explanation of the parties' intent is irrelevant because paragraph M clearly and unambiguously states what would happen if Oda successfully negotiated agreements with the tax authorities, or, on the other hand, if Oda did not successfully negotiate agreements with the tax authorities. See Rosales v. Rosales, 108 Hawai'i 370, 374, 120

P.3d 269, 274 (2005); Jendrusch v. Jendrusch, 1 Haw. App. 605, 609, 623 P.2d 893, 897 (1981). The language of paragraph M does not specify a particular time frame or condition indemnification on the parties' continued joint ownership, which was terminated by the Kims' filing of this suit. Accordingly, because Oda "d[id] not successfully negotiate agreements with the tax authorities which satisfy the Tax Obligations and result in the release of the Tax Liens" in accordance with the Buyout Agreement, Tina Kim "*shall* indemnify Husband and *shall* reimburse him in an amount, or in such amounts, that total one-half (1/2) of any payments made by Husband on account of the Tax Obligations." (Emphasis added).

    F.   The Attorneys' Fees

The Circuit Court awarded the Kims' attorneys' fees under HRS § 668-17 (1993),[9] which "gives the judge the discretion of allowing fees to attorneys for any of the parties in a partition proceeding and of apportioning such fees for payment by the parties, 'as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties.'" The Nature Conservancy v. Nakila, 4 Haw. App. 584, 601, 671 P.2d 1025, 1037 (1983) (quoting HRS § 668-17). Additionally, the supreme court has stated that

> the judge is an expert herself and knows as well as a legal expert what are reasonable attorney fees, and that the amount of attorney's fees is within the judicial discretion of the court, and in fixing that amount the trial court may proceed upon its own knowledge of the value of the solicitor's services.

Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 306, 141 P.3d 459, 479 (2006) (citation and brackets omitted).

Oda argues that the Kims' claim for attorneys' fees under HRS § 668-17 was defective because the Kims' attorney: (1)

---

[9]    HRS § 668-17 provides, in relevant part:

> In addition to costs of the proceeding the judge may allow any fee or fees for legal services rendered by the attorneys for any of the parties, and apportion the same for costs for payment by and between the parties or any of them, all as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties, respectively.

16

"did nothing more than attach the bills to the motion;" (2) used block billing; (3) "spent more time on various tasks that clearly were uncalled for;" (4) took an unreasonably long time to draft the complaint; and (5) spent time preparing for motions that were not filed.

We cannot conclude that the Circuit Court abused its discretion in its award. It appropriately reduced the Kims' attorneys' fees to $17,000 from $19,100.[10] It assessed the reasonableness of both the time spent and the rate charged. In a declaration, the Kims' attorney described his experience level and explained that the hourly fee of $250 was "on the lower end of the range of fees charged by partners/law firms in the State of Hawaii of like experience and for the same or similar of [sic] type of matters."

In addition, block billing is not automatically prohibited by courts:

> Unlike vague or generic task entries, block billing entries do not always suffer from inadequate description. Their infirmity sterns [sic] from the fact that they represent activities lumped together in a single entry with no indication how much time was spent on each task. In its review of these entries, the [c]ourt was left to approximate the amount of time which should be allocated to each task and cannot determine with a high degree of certainty, as it must, that the billings are reasonable.

Haw. Ventures, LLC v. Otaka, Inc., 116 Hawaiʻi 465, 475, 173 P.3d 1122, 1132 (2007) (citation and emphasis omitted). Here, the Circuit Court did not abuse its discretion in determining that the billing entries provided by the Kims' attorney were adequate. The billing entries indicated the specific legal work completed and the amount of time spent on each task, and the entries allowed the Circuit Court to determine, with a high degree of certainty, whether the work and time spent were reasonable and necessary in the partition action.

Similarly, we cannot conclude that the Circuit Court abused its discretion in determining the reasonableness of Finance Factors's attorneys' fees. Finance Factors requested

---

[10] The Kims' attorney initially requested fees of $19,975 but reduced it to $19,100 after withdrawing 3.5 hours of work on a motion.

$9,583.75 in attorneys' fees, and the Circuit Court reduced its award of attorneys' fees to $9,000. Oda argues that Finance Factors's claim for attorneys' fees was defective for the same reasons as with the Kims' claim and for some additional reasons. However, upon review, Finance Factors's attorneys indicated the specific legal work completed and the amount of time spent on each task, and the entries allowed the Circuit Court to determine, with a high degree of certainty, whether the work and time spent were reasonable and necessary.[11]

  G. The Tax Department's Appeal

   The Tax Department argues that, in determining priority between Finance Factors's second mortgage and the Department of Taxation's tax liens, the Circuit Court erred when it relied on Sawada v. Endo, 57 Haw. 608, 561 P.2d 1291 (1977), rather than HRS § 231-33 (2001), which states, in relevant part:

> (b) Any state tax which is due and unpaid is a debt due the State and constitutes a lien in favor of the State upon all property and rights to property, whether real or personal, belonging to any person liable for the tax. The lien for the tax, including penalties and interest thereon, arises at the time the tax is assessed, or at the time a return thereof is filed, or at the time of filing by the department of taxation of the certificate provided for by subsection (f) whichever first occurs. From and after the time the lien arises it is a paramount lien upon the property and rights to property against all parties, whether their interest arose before or after that time, except as otherwise provided in this section.
>
> (c) The lien imposed by subsection (b) is not valid as against:
>
> (1) A mortgagee or purchaser of real property, or the lien of a judgment creditor upon real property, whose interest arose prior to the recording by the department of the certificate provided for by subsection (f)[.]
>
>  . . .

---

[11] Oda does not argue on appeal (nor did he argue in the court below), that it was error for the Circuit Court to order payment of Finance Factors's fees and costs as a cost of the partition, to be paid prior to the payment of any of the recorded liens (including Finance Factors), instead of as part of the indebtedness owed to Finance Factors, which was evidenced in the promissory notes and secured by the first and second mortgages. Nor does Oda argue that a portion of Finance Factors's fees and costs should have been attributed to the contractual debt obligation underlying the second mortgage. Therefore, such arguments were waived and we do not address them.

> (f) The department may record in the bureau of conveyances at Honolulu, or in respect of a lien on a motor vehicle, file with the county director of finance, a certificate setting forth the amount of taxes due and unpaid, which have been returned, assessed, or as to which a notice of proposed assessment has issued. . . .

Thus, HRS § 231-33(b) plainly provides that "from and after the time" that the State tax lien arises, it is a paramount lien upon the subject property, whether the interest of the person owing the tax "arose before or after that time, except as otherwise provided in this section." Here, the Tax Department's liens arose no later than August 12, 1994 and December 12, 1995. Thus, the Tax Department's liens were paramount liens on the Property from those dates, even assuming that Oda's attachable interest as a tenant in common did not arise until the effective date of Oda and Tina Kim's divorce, June 4, 2008. The only exception, set forth in HRS § 231-33(c), is applicable to mortgagees, purchasers, and judgment creditors whose interest arose prior to the Tax Department's recording of the subject lien, and clearly does not apply.

Sawada v. Endo, 57 Haw. 607, 561 P.2d 1291 (1977), is also inapplicable to this case. In Sawada, the determinative question was "whether the interest of one spouse in real property, held in tenancy by the entireties, is subject to levy and execution by his or her individual creditors." Id. at 610, 561 P.2d at 1294. Levy and execution are methods of enforcement. The supreme court held that "the interest of a husband or a wife in an estate by the entireties is not subject to the claims of his or her individual creditors during the joint lives of the spouses." Id. at 612, 561 P.2d at 1295. Here, although Oda and Tina Kim originally held the Property in a tenancy by the entirety, their tenancy by the entirety converted into a tenancy in common upon their 2008 divorce; hence, Oda did not hold his

interest as part of a tenancy by the entirety at the time that the Tax Department sought to enforce its lien.[12]

Therefore, we conclude that the Circuit Court erred when it concluded that Finance Factors's second mortgage had priority over the Tax Department's liens with respect to Oda's share of the sale proceeds.

H.   Kims' Mootness Argument

Finally, we reject the Kims' argument that any relief requested by Oda and the Tax Department is moot because the proceeds from the sale of the Property have been distributed. The Circuit Court has ample alternatives for fashioning suitable relief and this argument is wholly without merit.

V.   CONCLUSION

The Circuit Court's July 30, 2010 Judgment and the Distribution Order are affirmed in part, and vacated in part, with respect to apportionment, priorities, and distribution of the net proceeds of the sale of subject Property, to the extent set forth herein.  This case is remanded for further proceedings, to the extent necessary to correct the errors identified in this Memorandum Opinion and to provide suitable relief consistent herewith.

DATED: Honolulu, Hawai'i, December 20, 2013.

On the briefs:

Edward C. Kemper
for Defendant-Appellant/
Cross-Appellee

Hugh R. Jones
Mary Bahng Yokota
Deputy Attorneys General
for Defendant-Appellee/
Cross-Appellant
DEPARTMENT OF TAXATION,
 STATE OF HAWAI'I

Chief Judge

Associate Judge

Associate Judge

---

[12]   In addition we note that, unlike the wife in Sawada, Tina Kim (as well as Finance Factors) expressly acknowledged and agreed that the second mortgage was subject to certain prior interests, including the Tax Department's lien, as set forth in Exhibit A to the second mortgage (which Tina Kim executed).

Frances E.H. Lum
Deputy Attorney General
for Defendant-Appellee
DEPARTMENT OF LABOR AND INDUSTRIAL
 RELATIONS, STATE OF HAWAI'I

Neal K. Aoki
(KOSHIBA AGENA & KUBOTA)
for Plaintiffs-Appellees

NO. 30680; DAVID EDWARD KIM, DENISE NYUK LEN KIM, and TINA JEAN KIM, Plaintiffs-Appellees, vs. KEITH SHIGEAKI ODA, Defendant-Appellant/Cross-Appellee, and DEPARTMENT OF TAXATION, STATE OF HAWAII, Defendant-Appellee/Cross-Appellant, and FINANCE FACTORS, LIMITED, DISCOVER BANK, through its servicing agent, DISCOVER FINANCIAL SERVICES, INC., UNITED STATES OF AMERICA, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, DEPARTMENT OF LABOR & INDUSTRIAL RELATIONS, STATE OF HAWAII, Defendants-Appellees, and DOE PERSONS 1-20, and DOE ENTITIES 1-20, Defendants; *Memorandum Opinion*